**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | | |
|---|---|---|
| **JACQUELYN OWEN on Behalf of Herself and on Behalf of All Others Similarly Situated,** | § § § § | |
| **Plaintiff,** | § § | |
| | § | **CIVIL ACTION NO. _____** |
| **v.** | § § | |
| **LANDRY'S, INC., LANDRY'S SEAFOOD HOUSE - FLORIDA, INC., and RAINFOREST CAFÉ, INC.,** | § § § § | |
| **Defendants.** | § § | |

**PLAINTIFF'S ORIGINAL COLLECTIVE ACTION
AND CLASS ACTION COMPLAINT**

1.     The case implicates Defendants Landry's Inc.'s, Landry's Seafood House - Florida, Inc.'s, and Rainforest Café, Inc.'s ("Defendants" collectively) violations of the Fair Labor Standards Act's ("FLSA") tip credit and subsequent underpayment of their employees at the federally mandated minimum wage.  Plaintiff brings this case as a collective action under the FLSA, 29 U.S.C. 216(b) on behalf of herself and on behalf of all similarly situated workers.

2.     Defendants pay their tipped employees, including servers and bartenders, below the minimum wage rate by taking advantage of the tip-credit provision of the FLSA. Under the tip-credit provision, an employer of tipped employees may, under certain circumstances, pay its employees less than the minimum wage rate by taking a "tip credit" against the minimum wage requirement based upon the amount of tips the employees received from customers.  *Ash v. Sambodromo, LLC*, 676 F. Supp. 2d 1360, 1369 (S.D. Fla. 2009) citing *Wajcman v. Investment Corp. of Palm Beach*, 620 F. Supp. 2d 1353, 1356 n. 3 (S.D. Fla. 2009).

1

3.      However, there are strict requirements for an employer to utilize the "tip credit." *See* 29 U.S.C. 203(m).  An employer must advise an employee in advance of its use of the tip credit pursuant to the provisions of section 3(m) of the FLSA. *See id*. stating (the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection.").  That is, the employer must inform the employee: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

4.      Further, it is illegal for employers to require tipped employees to give up a portion of their tips to their employer or to ineligible employees, such as kitchen staff. *See, e.g., Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (for "the work shifts in which salad mixers were included within the tip pool, the pooling scheme was illegal..."); *Bernal v. Vankar Enter., Inc*., 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008).  "Where a tipped employee is required to contribute to a tip pool that includes employees who do not customarily and regularly receive tips, the employee is owed the full $7.25 minimum wage and reimbursement of the amount of tips that were improperly    utilized    by    the    employer."    DOL    Fact    sheet    #15, https://www.dol.gov/whd/regs/compliance/whdfs15.pdf

5.      Additionally, an employer must pay the minimum statutory hourly rate ($2.13 per hour under the FLSA).  *See* 29 U.S.C. 203(m).

6.      Moreover, an employer cannot pay below the minimum wage to tipped employees and require those tipped employees to perform non-tipped work that is unrelated to the tipped occupation. *See, e.g., Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when

tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties…such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work.").

7.      Finally, an employer cannot require its tipped employees to perform non-tipped work that is related to the employees' tipped occupation but exceeds 20 percent of the employees' time worked during a workweek. *See Fast v. Applebee's Int'l, Inc*., 638 F.3d 872, 880 (8th Cir. 2011) ("employees who spend 'substantial time' (defined as more than 20 percent) performing related but nontipped duties should be paid at the full minimum wage for that time.").

8.      Defendants' violated the law in the following respects:

   a.   **Violation for failure to inform:** Defendants failed to correctly inform Plaintiff and the Class Members of the desire to rely on the tip credit to meet its minimum wage obligations.  In fact, Defendants failed to inform Plaintiff of the following: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

   b.   **Violation for making illegal deductions that reduced the direct wage of Plaintiff below the minimum required hourly wage for tipped employees:** Plaintiff were required to purchase certain clothing to work for Defendants, which reduced their wages below the minimum hourly wage required for tipped employees.  Plaintiff were also required to perform training at home without pay, which reduce their hourly rate below $2.13 per hour.

   c.   **Violation for performing work unrelated to tipped occupation:** Plaintiff were required to perform improper types, and excessive amounts, of non-tipped work, including, but not limited to moving tables and chairs, cleaning ledges, sweeping floors, cleaning crayons, and cleaning appliances.

   d.   **Violation for performing non-tipped side work in excess of 20% of the time spent working in the week**: Plaintiff were required to perform greater than 20% of their time in performing non-tip producing side work, including, but not limited to, general cleaning of the restaurant, cleaning tables, rolling silverware, refilling condiments, setting up tables, setting up food and drink platters, and cleaning and stocking the serving line.

9.      As a result of these violations, Defendants have lost the ability to use the tip credit and therefore must compensate Plaintiff and all similarly situated workers at the full minimum wage rate, unencumbered by the tip credit, and for all hours worked.  In other words, Defendants must account for the difference between the wages paid to Plaintiff and all similarly situated workers and the minimum wage rate.

10.     Moreover, in March 2020, Defendants fired hundreds of workers without sixty (60) days of advance notice.  This is a civil action for the collection of unpaid wages and benefits for sixty (60) calendar days pursuant to the Worker Adjustment and Retraining Notification Act of 1988, 29 U.S.C. §§ 2101-2109 *et seq*., (the "WARN Act").  Plaintiff was an employee of Defendants until she was terminated as part of, or as result of a mass layoff or plant closing ordered by Defendants without the required statutory notification.  As such, Defendants are liable under the WARN Act for the failure to provide the Plaintiff and all other similarly situated former employees (the "WARN Class Members") at least 60 days of advance written notice of termination, as required by the WARN Act.

## SUBJECT MATTER JURISDICTION AND VENUE

11.     This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), *et. seq*. and the WARN Act.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to this claim occurred in this district, including many of the wrongs herein alleged.  In particular, Plaintiff worked in this District and was denied the wages she was entitled under the law in this District.

13.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in this District because Defendants' violation of the WARN Act occurred in this district.

## PARTIES AND PERSONAL JURISDICTION

14.     Plaintiff Jacquelyn Owen is an individual residing in Orlando, Florida.  Her written consent to this action is attached hereto as Exhibit "A."  Plaintiff was previously employed by Defendants at the Rainforest Café in the Disney Animal Kingdom Theme Park from July 2016 to March 2020.

15.     The FLSA Class Members are all current and former tipped workers employed by Defendants at a Rainforest Cafe for at least one week during the three year period prior to the filing of this action to the present.

16.     The WARN Class Members are all employees terminated by Defendants in March 2020 without 60 days advance notice.

17.     Defendant Landry's Inc. is a foreign corporation doing business in Florida.  Said defendant may be served with process by serving its registered agent - Steven L Scheinthal - at 1510 West Loop South, Houston, Texas 77027.

18.     Defendant Landry's Seafood House - Florida, Inc. is a domestic for profit corporation.  Said defendant may be served with process by serving its registered agent – CT Corporation System - at 1200 South Pine Island Road, Plantation, FL 33324.

19.     Defendant Rainforest Café, Inc. is a foreign corporation doing business in Florida. Said defendant may be served with process by serving its registered agent – CT Corporation System - at 1200 South Pine Island Road, Plantation, FL 33324.

20.     This Court has personal jurisdiction over Defendant Landry's Seafood House - Florida, Inc. because it is a Florida for profit corporation.  This Court has personal jurisdiction

over Defendants Landry's, Inc. and Rainforest Café, Inc. because they have purposefully availed themselves of the privileges of conducting activities in the state of Florida and established minimum contacts sufficient to confer jurisdiction.  Defendants Landry's, Inc. and Rainforest Café, Inc. do business in Florida, advertise in Florida, market to Florida residents, and the violations of the law forming the basis of this lawsuit occurred in Florida.  Therefore, the assumption of jurisdiction over Defendants Landry's, Inc. and Rainforest Café, Inc. will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.  Defendants Landry's, Inc. and Rainforest Café, Inc. also have had and continue to have continuous and systematic contacts with Florida sufficient to establish general jurisdiction over them.  During all time relevant to this action, Defendants Landry's, Inc. and Rainforest Café, Inc. conducted business in Florida, employed Florida residents, marketed to residents of Florida, and owned or leased property in Florida.

## COVERAGE

21.    At all material times, Defendants have been employers within the meaning of the FLSA.  29 U.S.C. § 203(d).

22.    At all material times, Defendants have been enterprises in commerce or in the production of goods for commerce within the meaning of the FLSA.  29 U.S.C. § 203(s)(1).

23.    At all material times, Defendants have enjoyed yearly gross revenue in excess of $500,000.

24.    At all material times, Plaintiff and FLSA Class Members were employees engaged in the commerce or the production of goods for commerce.

25.     At all material times, Defendants have operated as a "single enterprise" within the meaning of 29 U.S.C. § 203(r)(1).  That is Defendants perform related activities through unified operation and common control for a common business purpose.

26.     Defendants operate a nationwide chain of restaurants under the name Rainforest Cafe under the control of the same senior level management.   Indeed, the establishments advertise    themselves    as    a    unified    entity    through    the    same    website    - https://www.rainforestcafe.com/.

27.     Defendants represent themselves to the public as a company operating at multiple locations.  They share employees, have a common management, pool their resources, operate from the same headquarters, have common ownership, and have the same operating name.

28.     Defendants operate under a unified business model and part of that unified business model is the wage violations alleged in this Complaint.

29.     Based upon these facts, at all material times, Defendants have operated as a "single enterprise" within the meaning of 3(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1).   That is, Defendants perform related activities through unified operation and common control for a common business purpose. *See Brennan v. Arnheim and Neely, Inc.*, 410 U.S. 512, 515 (1973); *Reich v. Bay, Inc.*, 23 F.3d 110, 113 (5th Cir. 1994). Defendants are jointly and severally liable for the violations of the other.

30.     Additionally, based upon these facts, Defendants are joint employers and are jointly and severally liable for all wage and hour compliance, including the failure to pay minimum wage compensation for all hours worked during the workweek. *See* 29 C.F.R. § 791.2(a); *Schultz v. Capital International Security, Inc.*, 466 F.3d 298, 306 (4th Cir. 2006).

31.     At all times material to this action, Defendants were "an employer" within the meaning of the WARN Act.  29 U.S.C. § 2101(a)(1).

32.     Prior to the mass layoff or plant closing that forms the basis of this action, Defendants employed more than 100 employees, exclusive of part-time employees.

33.     Prior to the mass layoff or plant closing that forms the basis of this action, Defendants employed 100 or more employees who in the aggregate worked at least 4,000 hours a week, exclusive of overtime hours, within the United States.

34.     Upon information and belief Defendants had authority to terminate employees at the single site of employment – the Rain Forrest Café in the Disney Animal Kingdom Theme Park.

35.     At all relevant times, Plaintiff and the WARN Class Members were "employees" of Defendants as that term is used in 29 U.S.C. § 2101.

## FACTS

36.     Defendants operate a nationwide chain of restaurants under the trade name "Rainforest Cafe" throughout the U.S.   Defendants operate in Arizona, Florida, Illinois, Michigan, Minnesota, New Jersey, Nevada, Texas, Tennessee, and other states.

37.     The Rainforest Cafe restaurants are full-service restaurants that employ waiters and bartenders to provide services to customers.

38.     A waiter gathers orders from customers and delivers food and drinks to the customers.

39.     A bartender makes various alcoholic beverages to customers.

40.     Defendants pay their waiters and bartenders less than the federal minimum wage by attempting to take advantage of the tip credit in 29 U.S.C. § 203(m).

8

41.    Defendants attempted to utilize the tip credit to meet their minimum wage obligation to their tipped employees, which includes waiters and bartenders.  Plaintiff and the FLSA Class Members are tipped employees harmed by Defendants' conduct.

42.    Plaintiff Owen worked for Defendants at the Rainforest Café in the Disney Animal Kingdom Theme Park from July 2016 to March 2020 as a waitress.  For her work, she was paid an hourly rate that was less than the federal minimum wage and less than the Florida minimum wage.  She was paid approximately $5.40 per hour by Defendants.

43.    The tip credit has a harmful effect on workers that threatens the health of the economy.  Adasina Social Capital, a company representing investors with more than $538 billion in assets, has issued a letter to large corporations operating restaurants advising of the ills of using the tip credit.  (*See* https://adasina.com/investor-statement-in-support-of-ending-the-subminimum-wage/, last visited February 21, 2021).  The letter states as follows:

> Tipped workers are the largest group paid a subminimum wage and represent approximately six million people in the United States. The restaurant industry by far employs the largest number of tipped workers, representing 13.6 million people.
>
> **Frozen at $2.13 per hour, a tipped subminimum wage worker can be paid as little as $4,430 per year for full-time work**. As a result, in the 42 states that allow payment of a subminimum wage, tipped workers are more than twice as likely to live in poverty, and the rates are even higher for women and people of color. The subminimum wage for tipped workers has risen little since it was enacted following the emancipation of slavery, a time when employer trade associations pushed to recoup the costs of free, exploited labor.

(*Id*.) (emphasis in original)

44.    Given the harmful effects of the tip credit, there are strict requirements that must be met by an employer who seeks to utilize the trip credit to meet their minimum wage obligations.

45.     In this case, Defendants did not satisfy the strict requirements to use the tip credit. Defendants maintained a policy and practice whereby they failed to provide the Plaintiff and the FLSA Class Members with the statutorily required notice regarding (1) the amount of the cash wage that is to be paid to the tipped employee, (2) the amount by which the wages of the tipped employee are increased on account of the tip credit, (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool, and (4) that the tip credit shall not apply to any employee who does not receive the notice.

46.     Defendants also maintained a policy and practice whereby tipped employees were required to perform non-tip producing side work unrelated to the employees' tipped occupation. As a result, Plaintiff and the FLSA Class Members were engaged in dual occupations while being compensated at the tip credit rate.  While performing these non-tip generating duties, they did not interact with customers and could not earn tips.

47.     These duties include but are not limited to the following: sweeping floors, moving and stacking tables and chairs, setting up silverware, wiping tables and counters, cleaning the wait station, setting up the soda machine, washing appliances, cleaning ledges, and washing trays, amongst other activities, that were not related to her tipped duties.

48.     Defendants also maintained a policy and practice whereby tipped employees were required to spend a substantial amount of time, in excess of 20 percent, performing non-tip producing side work related to the employees' tipped occupation.

49.     Specifically, Defendants maintained a policy and practice whereby tipped employees, were required to spend a substantial amount of time performing non-tip producing side work, including, but not limited to cleaning tables, refilling condiments, picking up crayons, making coffee, and setting up food and drink platters.

50.     Further, Defendants required Plaintiff and the FLSA Class Members to perform non-tipped producing work prior to the opening of the restaurant and after the restaurant closed. Indeed, Defendants required the Plaintiff and FLSA Class Members to arrive prior to the restaurants opening for business when there were no customers and no opportunity to earn tips, to perform manual labor cleaning and setup duties.  Likewise, Defendants required the Plaintiff and FLSA Class Members to remain at the restaurant after it had closed for business and there was no opportunity to earn tips, to perform manual labor cleaning duties.  At times, they spent 30 minutes to three hours performing work before the restaurant was open and the same amount of time after the restaurant was closed performing non-tipped producing work.  The Plaintiff and FLSA Class Members were paid less than the federal minimum wage when performing the opening and closing duties.

51.     Similarly, Defendants regularly hosted banquets and events at Rainforest Café. Some of the banquets and events were breakfast events.  Plaintiff and the FLSA Class Members were required to arrive at the restaurant approximately 2-3 hours prior to the start of the event to set up the food stations, drink stations, set up the platters with various items (napkins, silverware, condiments, etc.), were required to move tables and chairs, and other physical labor tasks to prepare for the banquet/event.  After the banquet/event was over, Plaintiff and the FLSA Class Members were required to stay additional 1-1.5 hours to clean.  This included moving tables and chairs, sweeping, floors, removing buffet stands, throwing away trash, and other tasks.  However, Defendants did not pay the Plaintiff and FLSA Class Members the full minimum wage rate for this work. Instead, they were paid less than the minimum wage.

52.     The duties described above were duties that are customarily assigned to "back-of-the-house" employees in other establishments, who typically receive at least the full minimum wage rate.

53.     During Plaintiff's and the FLSA Class Members' employment, checklists were posted in Defendants' restaurants with numerous non-tipped duties that tipped employees were required to perform, in addition to serving customers.

54.     When the tipped employees performed these non-tipped duties, they usually did not interact with customers and did not have an opportunity to earn tips.

55.     Indeed, Defendants did not have a policy prohibiting tipped employees from performing certain types, or excessive amounts, of non-tipped work.

56.     Defendants did not track or record the amount of time their tipped employees spent performing non-tipped work, even though Defendants were capable of doing so.  Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments but Defendants failed to track to the specific tasks for Plaintiff.

57.     Defendants use a point-of-sale system to record hours worked by their tipped employees.  Defendants then analyze the information collected by this system, including the labor costs at each of the restaurants. Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendants failed to track to the specific tasks for Plaintiff and the FLSA Class Members.

58.     In the point-of-sale system, Defendants can create different "clock in" codes that would allow tipped employees to record their time at the full minimum wage when performing non-tipped work.

59.     However, Defendants did not allow their waiters and bartenders to clock-in at the full minimum wage rate when performing non-tipped work described in this Complaint.

60.     Defendants' managers at the restaurants were eligible to receive bonuses, in part, based on meeting or exceeding certain labor cost targets, which created an incentive to keep the amount paid to tipped employees low.

61.     Moreover, Defendants violated the law by not even paying the minimum "tipped" hourly rate.  Defendants required their tipped employees to pay for items for their uniform, including pants, socks, shorts, belts, and black shoes. These clothing items were required to perform work for Defendants and were primarily for the benefit and convenience of Defendants. The costs for these items were not reimbursed by Defendants and were approximately $300-$500.

62.     By requiring Plaintiff and the Class Members to pay for these work related expenses, their hourly rates of pay were reduced by the amount of these uniform costs.  As a result, the Plaintiff's and FLSA Class Members' compensation fell below the minimum wage rate, thereby negating Defendants' entitlement to claim the tip credit.

63.     Further, Defendants required the Plaintiff and FLSA Class Members to watch training videos at home without pay.  The training videos typically lasted one hour and included topics such as food safety, proper methods for handling food, and how to maintain credit card security.

64.     Because Defendants violated the requirements to claim the tip credit, Defendants lost the right to take a credit toward their minimum wage obligation to Plaintiff and the FLSA Class Members.

65.     As such, Plaintiff and the FLSA Class Members were not compensated at the mandated minimum wage.

66.     Defendants know or should have known that their policies and practices violate the law, and Defendants have not made a good faith effort to comply with the FLSA. Rather, Defendants knowingly, willfully, and/or with reckless disregard of the law carried and continue to carry out their illegal pattern and practice regarding their tipped employees. Defendants' method of paying Plaintiff and the FLSA Class Members was not based on a good faith and reasonable belief that its conduct complied with the law.

## REVISED FIELD OPERATIONS HANDBOOK AND NEW DUAL JOBS REGULATION

67.     On November 8, 2018, the Department of Labor issued opinion letter FLSA2018-27 which provided a standard for interpreting the dual jobs regulation that was different than the "80/20" rule that had existed at the time.  However, nearly every court to have considered this opinion letter held that the opinion letter was not entitled to any deference. *See, e.g., Callaway v. DenOne, LLC*, No. Civ. A. 1:18-cv-1981, 2019 WL 1090346 (N.D. Ohio Mar. 8, 2019); *Cope v. Let's Eat Out, Inc*., 354 F. Supp. 3d 976 (W.D. Miss. 2019).

68.     Therefore, the Department of Labor announced its intention to revise the dual jobs regulation found in 29 C.F.R. § 531.56(e) and issued a notice of proposed rule-making on October 8, 2019. (*See* https://www.federalregister.gov/documents/2019/10/08/2019-20868/tip-regulations-under-the-fair-labor-standards-act-flsa).  After soliciting comments, the Department of Labor published its final rule on December 30, 2020, which becomes effective on March 1,

2021.      (https://www.federalregister.gov/documents/2020/12/30/2020-28555/tip-regulations-
under-the-fair-labor-standards-act-flsa).

69.      Under the revised regulation, the Department of Labor made clear that an employer

may only take a tip credit under the following circumstances:

> consistent with the Department's current guidance, that an employer may
> take a tip credit for all non-tipped duties an employee performs that meet
> two requirements. First, the **duties must be related to the employee's
> tipped occupation**; second, the **employee must perform the related duties
> contemporaneously with the tip-producing activities** or **within a
> reasonable time immediately before or after the tipped activities**.

(*Id.*) (emphasis added).

70.      The Department of Labor provided guidance in the Final Rule about when the tip

credit may be taken and provided the following hypothetical:

> consider the following scenario: a hotel bellhop continuously performs
> tipped duties such as carrying luggage to guests' rooms during a busy 8-hour
> shift and then works for an additional 2 hours performing related non-tipped
> duties such as cleaning, organizing, and maintaining bag carts in storage.
> The 2 hours of related nontipped duties would not be "for a reasonable
> time" after the performance of tipped duties. **Accordingly, the bellhop was
> engaged in a tipped occupation (bellhop) for 8 hours and a non-tipped
> occupation (cleaner) for 2 hours.**

(*Id.*) (emphasis added).

71.      The Department of Labor explained that there is no bright line rule as to when an

activity is considered performed within "a reasonable time" before or after the tipped activities.

Instead, the circumstances of the job determine the reasonableness.

> the allowance for related duties performed "for a reasonable time
> immediately before or after" a tipped duty creates a sufficiently intelligible
> distinction between employees engaged in tipped occupations and non-
> tipped occupations. It is true that this limit does not create as bright a line as
> a firm cap on the amount of time an employee may spend on particular
> duties (although the 80/20 approach creates significantly greater uncertainty
> in other ways as discussed below). But the concept of reasonableness is a
> cornerstone of modern common law and is familiar to employers in a variety

15

of contexts… **Reasonableness balances a flexible accounting of circumstances with a sufficiently definite limit on acceptable conduct in those contexts**. This flexible approach is appropriate to apply to the question of whether particular duties are a part of an employee's tipped occupation.

(*Id.*) (emphasis added).

72.    Under the revised regulation, Defendants' pay policies violate the law.  First, Defendants illegally took a tip credit for the time spent performing tasks not contained in the O*NET Task list, including but not limited to, the time spent by Plaintiff and the FLSA Class Members cleaning ledges, and washing appliances.

73.    Second, Defendants illegally required Plaintiff and the FLSA Class Members to perform non-tip producing work that was not contemporaneous with their duties involving direct service to customers or for a reasonable time immediately before or after performing such direct-service duties.  That is because Defendants required Plaintiff and the Class Members to perform non-tipped work 30 minutes to three hours before the restaurants were open for business or after they were closed, when the restaurants did not have customers and there was no opportunity to earn tips.  During this time, Defendants paid below the minimum wage rate and forced the Plaintiff and FLSA Class Members to perform non-tip producing duties as described above.

74.    Given that Defendants failed to comply with the requirements to take the tip credit, Defendants have lost the ability to claim the tip credit and owe Plaintiff and the FLSA Class Members pay at the minimum wage rate for all hours they worked for Defendants.

## MASS TERMINATION OF WORKFORCE

75.    Additionally, Defendants terminated well over 1,000 employees, including Plaintiff, in March 2020.  In fact, it is believed that over 100 employees alone were terminated

from the Rainforest Café in the Disney Animal Kingdom Theme Park.  On or about March 16,

2020, Plaintiff and the WARN Class Members were told the following by Defendants.

> *Team Members will not be terminated, but due to the closures most will be placed on immediate furlough. All team members with a loss of hours are encouraged to reach out to the state as soon as possible regarding the potential payment of unemployment benefits… We have made the decision to maintain benefits for those team members currently enrolled in our health plan and who have accepted and remain on furlough through June 30, 2020.*

> *However, at this time the Company is suspending use of PTO until further notice. Therefore, hourly team members may not request or use PTO until further notice. Any accrued hours will be available upon your return for future use. Should you choose to resign from employment during this time, in accordance with applicable laws, we will pay out accrued and unused PTO, and your benefits coverage (if any) will terminate at the end of this month, March 2020. Any Team Members who choose to resign will not be scheduled when operations resume and will need to reapply for any open positions, once available.*

> *Salaries team members who are placed on furlough will not receive pay during that time. Salaried team members on furlough will not be permitted to access e-mail or any other systems while off, and should not respond to any work-related calls. If any manager asks you to work or perform any tasks related to work while on furlough, please contact Human Recourses.*

> *It is our sincere hope that these changes will only be in place for a short time. We look forward to getting back to work soon with our valued Team Members. We hope that everyone stays healthy and safe during these times.*

76.    Despite the fact that the communication stated that the "Team Members will not

be terminated," they were in fact terminated.  Plaintiff and the WARN Class Members were

terminated without cause and without 60 days notice.

77.    This mass termination of workers at one time qualifies as a plant closing and/or

mass layoff under the WARN Act.

78.    The WARN Act required Defendants to give Plaintiff and WARN Class Members at least 60 days advance written notice prior to their terminations.

79.    The Plaintiff and WARN Class Members were given zero advance notice prior to their termination.

80.    The Plaintiff and the WARN Class Members also did not receive all pay owed, including back pay and benefits.

## COLLECTIVE ACTION ALLEGATIONS

81.    Plaintiff brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all current and former tipped workers employed by Defendants at a Rainforest Cafe restaurant for at least one week during the three year period prior to the filing of this action to the present.

82.    Plaintiff has actual knowledge, through conversations with her co-workers that a class of similarly situated workers exists who have been subjected to the same policies of Defendants with respect to the payment of the minimum wage.

83.    The Class Members are similarly situated to Plaintiff in that they share the same duties and were subject to the same violations of the FLSA.

84.    Like Plaintiff, the Class Members were not given proper notice of the tip credit provisions, were paid below the tip credit rate of $2.13 per hour, and performed substantial work that was unrelated to their tip producing duties.

85.    Further, the Class Members were, like Plaintiff, not properly informed of Defendants' intent to utilize the tip credit.

86.    Moreover, the Class Members were also required to pay for work related expenses that dropped their compensation below the tipped wage.

87.     Plaintiff and the Class Members labored under the same corporate structure, the same corporate policies, the same corporate chain of command, and pursuant to the rules in the same company handbook.

88.     The names and address of the Class Members of the collective action are available from Defendants' records.  To the extent required by law, notice will be provided to these individuals by first class mail, email, text message, social media notices, or by the use of techniques and a form of notice similar to those customarily used in representative actions.

89.     Although the exact amount of damages may vary among the Class Members in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

90.     As such, the class of similarly situated Class Members is properly defined as follows:

> **All current and former tipped workers employed by Defendants at a Rainforest Cafe restaurant for at least one week during the three year period prior to the filing of this action to the present.**

## CLASS ACTION ALLEGATIONS

91.     Plaintiff also brings this action as a class action under Federal Rule of Civil Procedure 23(a), (b) and the WARN Act 29 U.S.C. § 2104(a)(5).

92.     Plaintiff brings this action on behalf of herself and the WARN Class Members.

93.     Plaintiff seeks to represent a WARN Class defined as follows:

> **All employees terminated by Defendants in March 2020 without 60 days advance notice.**

94.     Plaintiff and the WARN Class Members are "affected employee(s)" subject to an "employment loss," as those terms are defined in the WARN Act. 29 U.S.C. § 2101(a)(5) and (6).

95.     Plaintiff's claim satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action.

96.     The members of the class exceed 50 in number rendering joinder impracticable. The precise number of the WARN Class Members and their addresses are readily available from the records of Defendants.

97.     There are common questions of fact and law as to the class that predominate over any questions affecting only individual class members.  These questions of law and fact common to the class arising from Defendants' actions include, but are not limited to, the following:

   a.   Whether the provisions of the WARN Act apply;

   b.   Whether Defendants' terminations constitute a "plant closing" and/or a "mass layoff" under the WARN Act;

   c.   Whether Defendants failed to provide the notices required by 29 U.S.C. § 2102(b); and

   d.   The appropriate formula to measure damages under 29 U.S.C. § 2104(a).

98.     The questions listed above predominate over any questions affecting Plaintiff individually or any WARN Class Member in his or her individual capacity.

99.     A class action is the superior method for the fair and efficient adjudication of this controversy.  Defendants have acted or refused to act on grounds that are generally applicable to the class as a whole.

100.     The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for

other businesses, and substantially impede or impair the ability of the WARN Class Members to protect their interests.

101.    Plaintiff is an affected employee who was terminated by Defendants during the time period applicable to the rest of the class without the notice required by the WARN Act.  She is a proper members of the WARN Class.  Plaintiff is committed to pursuing this action and has retained counsel with extensive experience in prosecuting complex wage, employment, and class and collective action litigation.  Accordingly, Plaintiff is an adequate representatives of the class and has the same interest as all of its members.

102.    Plaintiff's claims are typical of the claims of all members of the class and Plaintiff will fairly and adequately protect the interests of the absent members of the class.

103.    Furthermore, class action treatment of this action is authorized and appropriate under the WARN Act which provides, by its terms, that a plaintiff seeking to enforce liabilities under the Act may do so on his/her own behalf and on behalf of other individuals similarly situated.  29 U.S.C. § 2104(a)(5).

## CAUSES OF ACTION

### COUNT I:  VIOLATION OF THE FAIR LABOR STANDARDS
### FAILURE TO PAY THE MINIMUM WAGE

104.    Plaintiff incorporates the preceding paragraphs by reference.

105.    This count arises from Defendants' violation of the FLSA in connection with their failure to pay the minimum wages. *See* 29 U.S.C. § 206.

106.    Plaintiff and the FLSA Class Members were paid hourly rates less than the minimum wage while working for Defendants.

107.     Plaintiff and the FLSA Class Members were not exempt from the minimum wage requirements of the FLSA.

108.     Defendants' failure to comply with the minimum wage requirements of the FLSA, and, in particular, the tip credit requirements, resulted in Plaintiff and the FLSA Class Members being paid less than the minimum wage rate.  Defendants' violations of the FLSA were willful and not based on a good faith belief that their conduct did not violate the FLSA.

### COUNT II:  VIOLATION OF THE WARN ACT

109.     Plaintiff incorporates all allegations contained in the foregoing paragraphs.

110.     At all relevant times, Defendants employed more than 100 employees who in the aggregate worked at least 4,000 hours per week, exclusive of overtime, within the United States.

111.     At all relevant times, Defendants were an "employer" as that term is defined in 29 U.S.C. § 2101(a)(1) and 20 C.F.R. § 639(a) and continued to operate as a business until they decided to order a mass layoff or plant closing at the facility.

112.     At all relevant times, Plaintiff and other similarly situated former employees were employees of Defendants at that term is defined by 29 U.S.C. § 2101.

113.     On or about March 16, 2020, Defendants ordered a mass layoff or plant closing at the facility, as those terms is defined by 29 U.S.C. § 2101(a)(2) and (a)(3).

114.     The mass layoff or plant closing at the facility resulted in "employment losses," as that term is defined by 29 U.S.C. § 2101(a)(2) for at least fifty of Defendants' employees or one-third of Defendants' workforce at the facility, excluding "part-time employees," as that term is defined by 29 U.S.C. § 2101(a)(8).

115.    The Plaintiff and the WARN Class Members were terminated by Defendants without cause on their part, as part of or as the reasonably foreseeable consequence of the mass layoff or plant closing ordered by Defendants at the facility.

116.    The Plaintiff and the WARN Class Members are "affected employees" of Defendants within the meaning of 29 U.S.C. § 2101(a)(5).

117.    Defendants were required by the WARN Act to give Plaintiff and the WARN Class Members notice that complied with the requirements of the WARN Act.

118.    Plaintiff and each of the WARN Class Members are "aggrieved employees" of the Defendants as that term is defined in 29 U.S.C. § 2104(a)(7).

119.    Defendants failed to pay Plaintiff and the WARN Class Members their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 days following their respective terminations, and failed to make the pension and 401(k) contributions and provide employee benefits under ERISA, other than health insurance, for 60 days from and after the dates of their respective terminations.

## DAMAGES SOUGHT

120.    Plaintiff and the FLSA Class Members are entitled to receive the difference between the minimum wage rate and the tip credit adjusted minimum wage for each hour they worked.

121.    Plaintiff and the FLSA Class Members are entitled to reimbursement for all illegal deductions and withheld tips.

122.    Plaintiff and the FLSA Class Members are entitled to reimbursement for all work related expenses they paid.

123.    Plaintiff and the FLSA Class Members are entitled to liquidated damages.

124.    Plaintiff and the WARN Class Members are entitled to recover an amount equal to the sum of their unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay, pension and 401(k) contributions and other ERISA benefits, for 60 days, that would have been covered and paid under the then-applicable employee benefits plans had that coverage continued for that period, all determined in accordance with the WARN Act.  29 U.S.C. § 2104(a)(1)(4).

125.    Plaintiff and Class Members are entitled to recover their attorneys' fees and costs as required by the FLSA and the WARN Act. 29 U.S.C. § 216(b); 29 U.S.C. § 2104(a)(6).

## JURY DEMAND

126.    Pursuant to their rights under the Constitution of the United States, U.S. CONST. amend VII, and FED R. CIV. P. 38(a), Plaintiff hereby demands trial by jury.

## PRAYER FOR RELIEF

127.    For these reasons, Plaintiff respectfully request that judgment be entered in their favor awarding Plaintiff and the Class Members:

a.  Minimum wage compensation unadulterated by the tip credit for Plaintiff and the FLSA Class Members;

b.  Liquidated damages for Plaintiff and the FLSA Class Members;

c.  All misappropriated funds including all tips, expenses, and wages wrongfully withheld for Plaintiff and the FLSA Class Members;

d.  For Plaintiff and the WARN Class Members, an amount equal to the sum of their unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay, pension and 401(k) contributions and other ERISA benefits, for 60 days, that would have been covered and paid under the then applicable employee benefit plans had that coverage continued for that period;

e.  Reasonable attorney's fees, costs, and expenses of this action;

f.  Pre and post judgment interest; and

g. Such other and further relief to which Plaintiff and the Class Members may be entitled, both in law and in equity.

Respectfully submitted,

By: /s/ *Ria N. Chattergoon*
Ria N. Chattergoon
RC Law Group
ria@therclawgroup.com
Florida Bar No. 15099
3900 Hollywood Boulevard, Suite 301
Hollywood, FL 33021
Tel: (954) 400-1620
Fax: (954) 400-1676

*Local Counsel for Plaintiff*

AND

HODGES & FOTY, L.L.P.

Don J. Foty*
DFoty@hftrialfirm.com
Texas Bar No. 24050022
4409 Montrose Blvd, Ste. 200
Houston, TX 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116

*Lead Counsel for Plaintiff and Class Members*

AND

THE LAZZARO LAW FIRM, LLC

Anthony J. Lazzaro*
Ohio Bar No. 0077962
Chastity L. Christy*
Ohio Bar No. 0076977
Lori M. Griffin*
Ohio Bar No. 0085241
920 Rockefeller Building
614 W. Superior Avenue
Cleveland, Ohio 44113
Telephone:      216.696.5000

Facsimile:        216.696.7005
Email:     anthony@lazzarolawfirm.com
Email:     chastity@lazzarolawfirm.com
Email:     lori@lazzarolawfirm.com

\*Will apply for admission pro hac vice

ATTORNEYS FOR PLAINTIFF AND CLASS
MEMBERS